**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**LANCE LAPOINT,**

                      **Plaintiff,**

    vs.                                        5:15-cv-185
                                              (MAD/ATB)

**SGT. PETER VASILOFF, individually
and in his official capacity, and OFFICER
DALE BARHITE, individually and in his
official capacity,**

                      **Defendants.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**OFFICE OF JOHN W. SHARON**          **JOHN W. SHARON, ESQ.**
109 South Warren Street
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF FRANK W. MILLER**         **FRANK W. MILLER, ESQ.**
6575 Kirkville Road                            **CHARLES C. SPAGNOLI, ESQ.**
East Syracuse, New York 13057
Attorneys for the Village Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    On February 19, 2015, Plaintiff Lance LaPoint ("Plaintiff") commenced this action *pro se* pursuant to 42 U.S.C. § 1983 against Sergeant Peter Vasiloff, the East Syracuse Police Department, the Village of East Syracuse, Onondaga County, unidentified "John Doe"

Defendants, and Officer Dale Barhite, asserting that Defendants violated his constitutional rights by using excessive force during an arrest, and that Onondaga County and its officers failed to provide adequate medical care for his resulting injuries.[1]  *See* Dkt. No. 1 at 3-4;[2] Dkt. No. 53.  On March 9, 2016, the Court granted the Village and County's motion for judgment on the pleadings. *See* Dkt. No. 56.  Defendants Vasiloff and Barhite, who are the only remaining Defendants, have now moved for summary judgment.  *See* Dkt. No. 120.

## II. BACKGROUND

On the night of February 24, 2012, Plaintiff, who had been smoking marijuana all day and had at least two alcoholic beverages, entered a rail yard in East Syracuse, New York, entered the engine compartment of a freight train, locked the door, and started sounding the train's whistle. *See* Dkt. No. 120-9 at ¶¶ 14-31.  Mark Perrault, an employee of CSX Transportation, approached the train and directed Plaintiff to exit.  *See* Dkt. No. 120-4 at 1.  When Plaintiff refused, Mr. Perrault called the police.  *See id.*

At this point, police from at least three different police departments reported to the rail yard; among them were Defendants Peter Vasiloff and Dale Barhite, who were officers of the former Village of East Syracuse Police Department.  *See* Dkt. No. 120-9 at ¶¶ 33-36.  When the officers arrived at the rail yard, they found Plaintiff inside the engine compartment with the doors locked.  *See id.* at ¶ 37.  Inside, Plaintiff was observed laughing, making an obscene gesture towards the officers, and pointing his finger like a gun and pretending to shoot at them as he continued to sound the train whistle.  *See id.* at ¶ 39.

---

[1] The Court notes that although Plaintiff commenced this action *pro se*, he is now represented by counsel.

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

Defendant Barhite and Officer Chad Frederick of the Town of DeWitt Police Department went to the rear of the train car to try a difference entrance, which also proved to be locked. *See id.* at ¶¶ 41-42; *see also* Dkt. No. 120-8 at ¶¶ 1, 6-7. A passing train prevented them from immediately returning to the side of the car in which Plaintiff had locked himself. *See id.* at ¶¶ 43-44. By the time they were able to return to the front of the car, several officers had already entered the engine car by a third door and were attempting to place Plaintiff under arrest. *See id.* at ¶ 57.

When Defendants Barhite and Vasiloff entered the engine car, Plaintiff was laying on the floor and "flailed his head, arms, and legs, and otherwise resisted being handcuffed and arrested." *Id.* at ¶¶ 68-69. Defendants acknowledge that, in order to get Plaintiff to place his hands behind his back so that he could be handcuffed, they struck Plaintiff on "the top of the arm and shoulder area" with closed fists. *See id.* at ¶ 70; Dkt. No. 129 at 4. After several strikes to both arms, Plaintiff finally complied. *See* Dkt. No. 129 at 4. Once handcuffed, Defendants contend that Plaintiff unsuccessfully attempted to head butt Defendant Barhite several times. *See* Dkt. No. 120-9 at ¶ 74.

Upon being taken into custody, Plaintiff was transported to the Village of East Syracuse Police Station. *See id.* at ¶ 75. During the morning hours of February 25, 2012, Plaintiff was arraigned in the Village of East Syracuse Court upon charges of criminal trespass in the third degree and resisting arrest. *See id.* at ¶ 79. The judge who presided over Plaintiff's arraignment noted that Plaintiff made apparently delusional comments and ordered a mental evaluation of Plaintiff. *See id.* at ¶ 80.

### III. DISCUSSION

**A.  Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Plaintiff's Response**

In compliance with the Court's Individual Rules of Practice, on June 12, 2018, Defendants filed a pre-motion letter indicating that they intended to file a motion for summary judgment. *See* Dkt. No. 118. In response to the pre-motion letter, the Court scheduled a telephone conference for June 20, 2018 at 11:30 a.m. Counsel for both parties participated in the telephone conference and the Court directed that the motion shall be filed no later than June 25, 2018. *See* Text Minute

4

Entry dated 06/20/2018. Further, the Court indicated that no extensions of the response and reply deadlines would be entertained. *See id.* Immediately following the telephone conference on June 20, 2018, Defendants filed their motion for summary judgment and set the response deadline for July 23, 2018. *See* Dkt. No. 120. On August 1, 2018, having still not filed its response, Plaintiff's counsel filed a letter motion indicating that he never received notice that the motion had been filed and asked for a brief extension, until August 14, 2018, to file a response. *See* Dkt. No. 124. Over Defendants' objection, the Court granted Plaintiff until August 6, 2018 to file his response. *See* Dkt. No. 128.

As Defendants correctly note, Plaintiff's late opposition to Defendants' motion for summary judgment does not include a response to Defendants' Statement of Material Facts. *See* Dkt. No. 129. In fact, the entirety of Plaintiff's "response" is a two page attorney declaration, fifteen pages of exhibits, and an attorney affirmation. *See id.*

Pursuant to Local Rule 7.1(a)(3), a party opposing a motion for summary judgment must file a response to the movant's Statement of Material Facts and this "response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). The Local Rule further provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis in original).

The Second Circuit has recognized "that district courts have the authority to institute local rules governing summary judgment submissions . . . and have affirmed summary judgment rulings that enforce such rules." *N.Y. Teamsters Conference Pension & Retirement Fund v.*

*Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (internal and other citations omitted). "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'" *Id.* at 649 (quotation and other citations omitted).

Although the Court is not permitted to rely on the movant's Statement of Material Facts where those facts are unsupported by the record, Defendants' Statement of Material Facts is fully supported by the record. As will be discussed in more detail below, Plaintiff's conclusory assertions, made in an attorney affidavit, are insufficient to create any questions of material fact.

**C.    Excessive Force**

*1. Standard*

Claims that police officers used excessive force in the course of an arrest are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In order to establish a Fourth Amendment excessive force claim, an individual must demonstrate that the actions of the arresting police officer were objectively unreasonable in light of the surrounding circumstances. *See Owens v. Colburn*, 860 F. Supp. 965, 972 (N.D.N.Y. 1994) (citation omitted). "The test of 'reasonableness' is not capable of precise definition or mechanical application; therefore, careful attention must be paid to the facts and circumstances of the case." *Id.* (citation omitted).

Three primary considerations guide the Court's application of the standard: (1) the nature and severity of the crime precipitating the arrest; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to flee. *See Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)

(citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citations omitted). As to the third factor, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000).

Officers are often required to make sudden decisions during hostile or tense encounters that in hindsight may appear overly harsh. *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citation omitted). Therefore, "'"[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" . . . violates the Fourth Amendment.'" *Owens*, 86 F. Supp. at 972 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973), *cert. denied*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973)) (other quotation omitted).

"Additionally, on an excessive force claim a plaintiff must present sufficient evidence to establish that 'the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable.'" *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quotations omitted). "'A de minimis use of force will rarely suffice to state a Constitutional claim.'" *Id.* at 407 (quoting *Roman v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)). However, force that causes permanent injury or is so serious as to shock the conscious is not considered *de minimis*. *See Wang v. Vahldieck*, No. 09-cv-3783, 2012 WL 119591, *7 (E.D.N.Y. Jan. 9, 2012) (citation omitted).

In order to prevail on a Section 1983 claim for damages against an individual, the plaintiff must show that the individual was personally involved in the alleged deprivation of the plaintiff's rights. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). "A police officer is

personally involved in the use of excessive force if he 'directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so.'" *Mcrae v. City of Hudson*, No. 1:14-cv-236, 2015 WL 275867, *6 (N.D.N.Y. Jan. 21, 2015) (quoting *Espada v. Schneider*, 522 F. Supp. 2d 544, 555 (S.D.N.Y. 2007)). "Under the latter theory, plaintiff must prove the use of excessive force by an individual and show that the defendant who allegedly failed to intervene: '1) possessed actual knowledge of the use ... of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.'" *Id.* (quoting *Lewis v. Mollette*, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010)).

### *2. Defendant Barhite*

In his complaint, Plaintiff contends that, upon noticing flash lights coming towards him, he opened the door to the door to the compartment and placed his hands on his head to demonstrate that he was complying with the officers. *See* Dkt. No. 1 at 3. At this point, Plaintiff claims that "[w]hile one officer was still shining his flashlight directly in my face causing me to be unable to see, I was suddenly struck in the face with something very hard." *Id.* Plaintiff claims that his eyes immediately went blurry and that he fell to the floor of the train. *See id.* Further, in his deposition, Plaintiff claimed that when he opened the door, the officer holding the flashlight immediately struck him across the face with it. *See* Dkt. No. 120-2 at 30. At no point during his deposition or otherwise in the record is Plaintiff able to identify which of the responding officers struck him in the face with a flashlight or otherwise used excessive force against him.

Defendant Barhite, however, has offered competent evidence demonstrating that he was

8

not personally involved in the alleged use of excessive force. In his affidavit, Defendant Barhite indicates that, soon after arriving at the scene, he went to the back of the engine car with DeWitt Police Officer Chad Frederick. *See* Dkt. No. 120-6 at ¶ 9. The door at the rear was locked so, after a another train on a parallel track had passed, he returned to the front of the train. *See id.* at ¶¶ 11-14. At this point, he indicates that other police officers had already gained access to the engine compartment through another door and were trying to gain control of Plaintiff. *See id.* at ¶ 14. As such, Defendant Barhite indicates that he was not at the door when it was first opened when Plaintiff claims to have been assaulted. *See id.* at ¶ 15. Defendant Barhite's account is corroborated by Officer Frederick's affidavit and the police report prepared by Defendant Barhite on February 25, 2012. *See* Dkt. No. 120-8; Dkt. No. 129 at 4.

The undisputed facts clearly demonstrate that Defendant Barhite was not personally involved in the alleged use of excessive force and that he would not have had an opportunity to intervene. Accordingly, the Court finds that Defendant Barhite is entitled to summary judgment.

### 3. Defendant Vasiloff

Similarly, Defendant Vasiloff indicates that, as Defendant Barhite moved to the rear of the engine compartment, he moved away in fear that Plaintiff could start operating/moving the train. *See* Dkt. No. 120-7 at ¶ 11. As the second train came through, Defendant Vasiloff moved further away. *See id.* at ¶ 12. After the train had passed, Defendant Vasiloff learned that other police officers had discovered a way to enter the engine compartment. *See id.* at ¶ 13. Defendant Vasiloff indicates that he did not witness the police officers' first entry into the engine compartment and, due to poor lighting conditions, could not see the first moments of their interaction with Plaintiff inside the engine compartment. *See id.* at ¶ 14. Despite the poor light, sounds from the compartment alerted Defendant Vasiloff that Plaintiff was resisting arrest. *See*

9

*id.* at ¶ 15. As such, he entered the engine compartment with Defendant Barhite to provide assistance. *See id.*

Once inside the compartment, Plaintiff continued to be noncompliant with instructions to submit to arrest and allow himself to be handcuffed. *See id.* at ¶ 21. "Instead, Plaintiff flailed his head, arms, and legs, and otherwise resisted being handcuffed and arrested." *Id.* at ¶ 22. Consistent with the police report, Defendant Vasiloff indicates that, to obtain Plaintiff's compliance, he and Defendant Barhite struck Plaintiff several times with closed fists to his arms and shoulders. *See id.* at ¶ 23; Dkt. No. 129 at 4. While these strikes did work to obtain Plaintiff's compliance, they did not inflict any serious injury to Plaintiff. *See id.* at ¶ 24. In fact, after Plaintiff was handcuffed, he attempted to head butt Defendant Barhite several times. *See id.* at ¶ 26.

In light of the surrounding circumstances, the Court finds that Defendant Vasiloff acted in an objectively reasonable manner. The undisputed facts clearly establish that Defendant Vasiloff applied only such force as was necessary to gain the compliance of an individual who was posing a risk to himself and other officers while actively resisting arrest. Accordingly, the Court grants the motion for summary judgment as to Defendant Vasiloff.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 11, 2018
      Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge